UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ APONTE DÁVILA,<br><br>    Plaintiff,<br><br>    v.<br><br>MUNICIPALITY OF CAGUAS, CONSOLIDATED WASTE SERVICE CORP., MAPFRE/PRAICO,<br><br>    Defendants,<br><br>    v.<br><br>EDDIE JIMÉNEZ COSME d/b/a CAFETERIA LA TERRAZA DE EDDIE, ET AL.,<br><br>    Third-Party Defendants. | CIVIL NO. 13-1367 (PAD-SCC) |

**OPINION AND ORDER**

Delgado-Hernández, District Judge

    Plaintiff was allegedly injured in a slip and fall accident or incident in 2009.[1] Claiming to be a citizen of Texas, he initiated this action for damages under Puerto Rico law pursuant to 28 U.S.C. § 1332. Defendants contend the action should be dismissed for lack of jurisdiction, pointing out that, like them, plaintiff is a citizen of Puerto Rico.

    In light of the jurisdictional dispute, the court ordered the parties to file motions in support of their respective positions. Having carefully reviewed the materials submitted, the court concludes plaintiff was a citizen of Puerto Rico when he filed the complaint. Therefore, the case must be dismissed for lack of subject matter jurisdiction.

---

[1] The court makes no assessment regarding the merits of plaintiff's substantive claim.

Case 3:13-cv-01367-PAD   Document 221   Filed 06/23/15   Page 2 of 11

José Aponte-Dávila v. Municipality of Caguas, et al.
Civil No. 13-1367 (PAD-SCC)
Opinion and Order
Page 2

## I.    STANDARD OF REVIEW

Federal jurisdiction based on diversity of citizenship requires that the matter in controversy be between citizens of different states. 28 U.S.C. § 1332(a)(1). For purposes of diversity, a person is a citizen of the state in which he is domiciled. García-Pérez v. Santaella, 364 F.3d 348, 350 (1st Cir. 2004); Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 49 (1st Cir. 1992). Once challenged, the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence. Padilla-Mangual v. Pavía Hospital, 516 F.3d 29, 31 (1st Cir. 2008); Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991). Domicile is determined as of the time the suit is filed. Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979); Padilla-Mangual, 516 F.3d at 31; García-Pérez, 364 F.3d at 350-351.

As Justice Holmes ably defined it, domicile is the technically pre-eminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined. Williamson v. Osenton, 232 U.S. 619, 625 (1914). Its determination requires an evaluation of all relevant circumstances, focusing on the totality of plaintiff's conduct. García v. American Heritage Life Ins. Co., 773 F.Supp. 516, 520 (D.P.R.1991); Lundquist, 946 F.2d at 11-12; 13(B) Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3612 (2d ed. 1984); 15 James Wm. Moore et al., Moore's Federal Practice, § 102-36[1] (3d ed. 2015).

## II.    FACTUAL BACKGROUND

The complaint here was filed on May 9, 2013. For that reason, the facts will be laid out in the context of that framework: before and after such date.

Case 3:13-cv-01367-PAD   Document 221   Filed 06/23/15   Page 3 of 11

José Aponte-Dávila v. Municipality of Caguas, et al.
Civil No. 13-1367 (PAD-SCC)
Opinion and Order
Page 3

**A.  BEFORE MAY 9, 2013**

1. Stateside Activity

Plaintiff was born and raised in Puerto Rico.  In the 1980s he moved to Florida to work as a professional truck driver (Docket No. 195, Exh. 1 at pp. 57-58).  He worked full-time for several companies in South Florida for about 1½ years and obtained a Florida Commercial Driver's License (Docket No. 195, Exh. 46 at ¶¶ 16-17; and Exh. 6).  While living and working in Florida, he regularly visited Puerto Rico at Christmas time and summer vacations (Docket No. 195, Exh. 46 at ¶¶ 16-17, 26). In the early 1990s, he purchased a commercial dump truck in Florida and went into business for himself.  Shortly afterwards, he returned to Puerto Rico, shipping his truck to work as an independent contractor in Puerto Rico. Id. at ¶¶ 18-19.

In 1998, plaintiff left Puerto Rico for Arkansas, where he began to work as a commercial interstate truck driver.  Id. at ¶ 20.  From about 1999 to 2004, he drove interstate full-time for Cal Ark and affiliated Arkansas companies with routes throughout the lower 48 States of the U.S. and Canadian Provinces.  Id. at ¶ 21.  In 2004, he moved to Laredo, Texas, to work as a commercial interstate trucker.  The same year, he began working for Landstar, a Laredo-based trucking company; traded a 1995 Freightliner truck; and purchased a ten-wheel semi-truck, a Freightliner Condo, 1999 Model. Id. at ¶¶ 27-28.

In 2005, plaintiff's father became ill, as a result of which plaintiff quit Landstar, returned the truck to the seller, and moved to Puerto Rico to help out with his father's business. Id. at ¶ 29.  To that end, he stayed with his parents in Canóvanas, working without a salary with his father's business until father's health improved.  Id. at ¶ 30.

Case 3:13-cv-01367-PAD   Document 221   Filed 06/23/15   Page 4 of 11

José Aponte-Dávila v. Municipality of Caguas, et al.
Civil No. 13-1367 (PAD-SCC)
Opinion and Order
Page 4

In 2007, plaintiff returned to Laredo, Texas. Id. at ¶¶ 30-31. In May 2007, he obtained a loan from the First National Bank in Laredo to purchase a ten-wheel semi-truck, a Freightliner Condo, 2001 Model. Id. at ¶¶ 32-33. After a short stint working for JB Express, he began working for Land Carrier, a Laredo based trucking company. Id. at ¶¶ 34, and 40. In January 2008, he obtained a Texas Class "A" Commercial Driver's License. Id. at ¶ 39; see also Docket No. 195, Exh. 11. In 2009, he was injured in a slip and fall incident (the event underlying this litigation) in Caguas, Puerto Rico, returning to Laredo the same year (Docket No. 195, Exh. 46 at ¶ 41).

In 2010, plaintiff worked for a trucking company called Hotfoot Logistics, but after three (3) months he quit due to persistent back pain. Id. at ¶ 56. Later that year, he began working as a truck driver on interstate routes for Warren Transport, a Laredo-based company. Id. at ¶ 58. On May 27, 2012, he suffered a paralyzing incident of back pain in Laredo. Id. at ¶ 61. He left Warren Transport a week later, and has not worked again. Id. at ¶ 62. From 2007 to 2012, he filed all of his U.S. Individual Tax Returns in Texas. Id. at ¶¶ 121-122, 126, 127; Docket No. 195, Exh. 37-42.

2. Puerto Rico

At the time of the 2009 incident where he was allegedly injured, plaintiff applied for and received medical coverage through the Puerto Rico Government's Health Plan (locally known as "Reforma"), listing his address as Caguas, Puerto Rico. The Plan's benefits are limited to residents of Puerto Rico (Docket No. 195, Exh. 2 at pp. 17-18). He used the Plan's cards for doctors and hospital visits in Puerto Rico from January 28, 2010 to August 18, 2013, receiving physical therapy in Puerto Rico (Docket No. 201, Exh. 4 at pp. 1-3).

José Aponte-Dávila v. Municipality of Caguas, et al.
Civil No. 13-1367 (PAD-SCC)
Opinion and Order
Page 5

While working for Warrant Transport (2010-May 2012), plaintiff completed and signed a form, "Warren Transport wants to get to know you!!!" stating "I make my home in Caguas, Puerto Rico" (Docket No. 200, Exh. 11).  After resigning from Warren Transport, in 2012, he sold the Freightliner Condo truck, threw away everything he had, including clothes and documents, and traveled to Puerto Rico, staying with his parents in Canóvanas and with his former wife in Caguas to recuperate and rehabilitate (Docket No. 200, Exh. 2 at pp. 25-26; and Exh. 3 at p. 2).

On September 12, 2011, plaintiff applied for a disability parking permit in Puerto Rico. The same day, the Department of Transportation and Public Works of Puerto Rico approved the application and issued the corresponding parking decal (Docket No. 201, Exh. 1).  In his application, he listed Caguas, Puerto Rico as his address (Docket No. 201, Exh. 2).  In January 2012, he renewed or applied for, and obtained a Puerto Rico Driver's License, listing his address as Caguas, Puerto Rico (Docket No. 195, Exh. 2 at pp. 45-46).  He let his Texas Commercial Driver's License expire on February 1, 2013.  Id. at p. 79.

In March 2013, plaintiff filed under penalty of perjury with the Puerto Rico Treasure Department, a Merchant's Registry Certificate listing his address as Caguas, Puerto Rico.  He accompanied the document with a Sworn Statement identifying himself as resident ("vecino") of Caguas, Puerto Rico (Docket No. 201, Exh. 6 at pp. 3-4).  The same month, he submitted an application for health-care benefits to the Medicaid Program of the Puerto Rico Health Department, listing his address as Bo. Cañaboncito, Carr. 785, Km. 5.4, Hormigas, Caguas, Puerto Rico.  Id. at pp. 5-6.

To be eligible to receive benefits, applicants must reside in Puerto Rico.  Plaintiff included a copy of his Puerto Rico driver's license, with the same address in Caguas, as proof of his

Case 3:13-cv-01367-PAD   Document 221   Filed 06/23/15   Page 6 of 11

José Aponte-Dávila v. Municipality of Caguas, et al.
Civil No. 13-1367 (PAD-SCC)
Opinion and Order
Page 6

residence. Id. at p. 7. After being certified for eligibility, the patient also has the responsibility of informing the Health Department of any change of address, family composition, income and employment. (See Article VI § 3 of the Law for the Administration of Health Insurance, P.R. Laws. Ann. tit. 24 §§ 7001, 7029(a)). It does not seem plaintiff ever did so.

    3. Texas

On April 30, 2013, plaintiff arranged to attend in Texas medical examinations for the Social Security Disability application that he had previously submitted prior to leaving for Puerto Rico (Docket No. 195, Exh. 46 at ¶¶ 69-71). He asserted that, on May 6, 2013, he renewed the Texas Commercial Driver's License with the Texas Department of Public Safety in Laredo, Texas. Id. at ¶ 74.[2]

**B. POST MAY 9, 2013**

In July 2013, plaintiff leased an apartment in Laredo, Texas until September 2014 (Docket No. 195, Exh. 46 at ¶ 79; and Exh. 19). In August 2013, he opened client accounts in his name for electric power and cable services with local Texas utilities. In September 2013, he re-activated a bank account and VISA debit card with the Wells Fargo Bank in Laredo, Texas (Docket No. 195, Exh. 46 at ¶¶ 80, 83-84; and Exh. 20-21, 23). That same month, he applied for and obtained a Texas voting registration certificate, and voted during the November 5, 2013 midterm elections

---

[2] Defendants vigorously contest this assertion, for plaintiff did not produce a license with any such issuance date, but one issued on October 31, 2003 (Docket No. 195, Exh. 8), and a Certification from the Texas Department of Public Safety (Docket No. 195, Exh. 11), reflecting a "CDL" (Commercial Driver's License) issued on September 30, 2013. Plaintiff states that the application for an account that he opened in September 2013 in the Wells Fargo Bank in Laredo refers to the Commercial Driver's License issuance date as May 6, 2013. The evidence is far from clear. The application includes two blocks, titled "Primary ID ST/Ctry/Prov" and "Primary ID Issue Date" (Docket No. 200, Exh. 4 at p. 2). The first block contains the word "TX" whereas the second block states "5/6/2013." From this exhibit no reasonable person could conclude that plaintiff renewed a license on May 6, 2013, particularly when contrasted to the utterly incompatible information set in the Certification issued by the Texas Department of Public Safety (Docket No. 195, Exh. 11).

Case 3:13-cv-01367-PAD   Document 221   Filed 06/23/15   Page 7 of 11

José Aponte-Dávila v. Municipality of Caguas, et al.
Civil No. 13-1367 (PAD-SCC)
Opinion and Order
Page 7

(Docket No. 195, Exh. 46 at ¶¶ 97-100; and Exh. 33-34). In September 2013, he received nutritional assistance from the Texas Health and Human Services Commission (Docket No. 195, Exh. 25).

After being examined by Dr. Xavier Cantu and by the SSA's independent medical expert Dr. Howard McClure, the Social Security Administration found, in March 2014, that plaintiff was totally impaired to work as a truck driver (Docket No. 195, Exh. 46 at ¶¶ 72, 103). Pursuant to the Texas state health care benefits, plaintiff was entitled to receive physical therapies for his back injury at the Ruthe B. Cowl Rehabilitation Center in Laredo. Id. at ¶ 86. Upon being declared completely disabled by the Social Security Administration, plaintiff traveled to Puerto Rico. Id. at ¶ 105. He arrived in Puerto Rico in July 2014, and has remained in the Island ever since. Id. at ¶ 107.

In September 2014, plaintiff arranged to receive his Social Security Disability benefits, which had been directly deposited in a Wells Fargo bank account in Laredo, Texas to a new bank account that he opened in Puerto Rico. Id. at ¶¶ 104, 151-152; and Docket No. 195, Exh. 43. In December 2014, he leased an apartment in Puerto Rico (Docket No. 195, Exh. 46 at ¶ 107).

### C. ADDITIONAL ASPECTS

Plaintiff has never owned real property in Texas or in Puerto Rico, nor filed personal income tax returns in Puerto Rico. Id. at ¶¶ 109-110, 116-117, and 133-136; Docket No. 200, Exh. 5 at p. 2; and Exh. 6 at p. 4. He identified his primary care physician to be a group of medical professionals known as Tiger Med, located in Caguas, Puerto Rico, where he has been receiving medical attention since the year 2009 (Docket No. 200, Exh. 2 at p. 2, l. 6-18, 24-25, p. 3, l. 1-12, p. 4, l. 20-25, p. 5, l. 1-19, and p. 6, l. 1-19).

Case 3:13-cv-01367-PAD   Document 221   Filed 06/23/15   Page 8 of 11

José Aponte-Dávila v. Municipality of Caguas, et al.
Civil No. 13-1367 (PAD-SCC)
Opinion and Order
Page 8

### III.  DISCUSSION

A person's domicile is the place where he has a fixed home and principal establishment, and to which whenever he is absent he has the intention of returning. Padilla-Mangual, 516 F.3d at 31; Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d 1027, 1029 (1st Cir. 1988). It is fair to say that for the most part, plaintiff was not a resident of Puerto Rico from the early 1980s until around 2007, when he moved to Puerto Rico to assist his family during his father's illness. Then he moved to Texas. But in 2009 he was allegedly injured in the incident leading up to this litigation. From that point on, he refocused his life to obtain medical treatment in Puerto Rico.

Plaintiff sold his Freightliner Condo truck, threw away everything he owned, and traveled to Puerto Rico, first residing with his parents in Canóvanas, and then with his former wife in Caguas. Moreover, he let his Texas Commercial Driver's License expire. He severed relevant links to Texas, making Puerto Rico his home. See, Hawes, 598 F.2d at 701 (concluding that plaintiff's move to seek medical treatment in New York City made her a domiciled of New York); Meléndez v. Brau-Ramírez, 194 F.Supp.2d 76, 80-81 (D.P.R. 2002)(same with respect to Puerto Rico).

Plaintiff submitted a statement describing himself as a full-time resident of Texas (Docket No. 195, Exh. 46 at ¶ 109). A party's own statement concerning domicile is relevant. However, it is given limited weight if in conflict with objective facts tending to support a finding of contrary intent. Rosado-Marrero v. Hospital San Pablo, 927 F.Supp. 576, 578 (D.P.R. 1996); Moore's, supra § 102.36 [2]; Wright, Miller & Cooper, supra § 3612. Such is the case here.

Strong evidence of domicile is found in representations a party has made on reports and documents submitted to third parties. See, O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982)(applying principle in context of representations to state officials on corporate reports);

Case 3:13-cv-01367-PAD   Document 221   Filed 06/23/15   Page 9 of 11

José Aponte-Dávila v. Municipality of Caguas, et al.
Civil No. 13-1367 (PAD-SCC)
Opinion and Order
Page 9

Lundquist, 946 F.2d at 12 (same). In 2009, plaintiff applied for and received health care benefits from the Government of Puerto Rico's medical Plan, listing his residence as Caguas, Puerto Rico.[3] He used the Plan's cards for doctors and hospital visits in Puerto Rico from January 28, 2010 to August 18, 2013, receiving physical therapy in Puerto Rico. In 2010-2012 he represented in a Texas company Form that he made his residence in Puerto Rico.[4] In September 2011, he applied for a special permit for disabled persons, identifying his address as one in Caguas, Puerto Rico.[5]

In March 2013, plaintiff submitted to the Department of Health of Puerto Rico an application for Medicaid benefits limited to residents of Puerto Rico, listing his address as one in Caguas, Puerto Rico. The same month, he submitted a Merchant's Registry Certificate under penalty of perjury to the Puerto Rico Department of the Treasury listing his address as Caguas, Puerto Rico. Together with the Certificate, he submitted a Sworn Statement identifying himself as a resident of Caguas, Puerto Rico. Although residence alone is not the equivalent of domicile, the place of residence is *prima facie* evidence of a party's domicile. Moore's, supra § 102.36 [4]. Plaintiff's domicile was Puerto Rico.

---

[3] The Plan is limited to residents of Puerto Rico. Plaintiff states that he was not so aware, and that he "was not asked whether he was a resident of Texas" (Docket No. 195, Exh. 1 at p. 23). Be that as it may, he identified himself as a resident of Puerto Rico.

[4] According to plaintiff, this was a form the company used "to know who one's children and spouses were because they did not want anybody other than our children and spouse onboard the truck with you" (Docket No. 195, Exh. 2 at pp. 101-102). The explanation does not erase away the statement that plaintiff made his residence in Caguas, Puerto Rico. Plaintiff alleges that his supervisor told him to put Caguas, and that "he had no other choice" (Docket No. 195, Exh. 2 at p. 100). He failed to identify who told him so or under what circumstances, and did not submit a statement from that person so attesting.

[5] The disability parking permit application was completed by physiatrist Dr. Eric Ramirez Diaz (Docket No. 195, Exh. 46 at ¶ 91). Plaintiff signed the application. By signing the application, plaintiff affirmed that all of the information included in the application was true and accurate (Docket Nos. 196 and 200, Exh. 2 at pp. 72-73).

Case 3:13-cv-01367-PAD   Document 221   Filed 06/23/15   Page 10 of 11

José Aponte-Dávila v. Municipality of Caguas, et al.
Civil No. 13-1367 (PAD-SCC)
Opinion and Order
Page 10

Plaintiff contends that when the complaint was filed on May 9, 2013, his domicile was Texas (Docket No. 195 at pp. 3, 13). Once acquired, domicile is presumed to continue until it is shown to have been changed. Padilla-Mangual, 516 F.3d at 31; Bank One, 964 F.2d at 50. To effect a change in domicile, two things are required: (1) residence in a new domicile; and (2) intention to remain there. Bower v. Egyptair Airlines Co., 731 F.3d 85, 90 (1st Cir. 2013); Valedón Martínez v. Hospital Presbiteriano de la Comunidad, Inc., 806 F.2d 1128, 1132 (1st Cir. 1986).

Plaintiff may have sought to reestablish links with Texas in July 2013 (lease agreement); September 2013 (car purchase, and Consumer Account Application with Wells Fargo Bank); and October 2013 (voting registration certificate).[6] These events occurred after the critical date of May 9, 2013, and by July 2014 plaintiff was back in Puerto Rico. He had made unambiguous representations to governmental authorities in Puerto Rico that his address was in Puerto Rico, and did nothing at all to notify those authorities of a change of address, from Puerto Rico to Texas or to any other stateside location. So, the evidence of domicile in Puerto Rico remained neatly in place awaiting plaintiff's return.

In these circumstances, plaintiff has not shown Texas rather than Puerto Rico residency on the critical date. See, León, 848 F.Supp. at 318 (rejecting plaintiff's assertion that she changed

---

[6] As indicated above in page 6, plaintiff also asserts to have renewed his Texas license on May 6, 2013. Although documentary evidence strongly suggests otherwise, see fn. 2, even if it were true that the license was renewed on that date, it would not add much to plaintiff's theory. Obtaining or renewing a driver's license is not necessarily a complicated procedure for one who (like plaintiff) already has the skill, and without more objective evidence of a domicile change is insufficient to tilt the balance to plaintiff's side. See, León v. Caribbean Hospital, 848 F.Supp. 317, 318 (D.P.R. 1994)(evaluating relative weight of out-of-state driver's license in concluding that plaintiff was a domiciliary of Puerto Rico).

Case 3:13-cv-01367-PAD   Document 221   Filed 06/23/15   Page 11 of 11

José Aponte-Dávila v. Municipality of Caguas, et al.
Civil No. 13-1367 (PAD-SCC)
Opinion and Order
Page 11

domicile when she moved from Puerto Rico to Illinois). He was still domiciled in Puerto Rico when the complaint was filed on May 9, 2013.[7]

## IV.   CONCLUSION

In view of the foregoing, the court lacks authority to adjudicate the merits of this case under Section 1332(a)(1). Plaintiff's motion at Docket No. 195 is DENIED, defendants' motion at Docket No. 196 is GRANTED, and the case is DISMISSED. Judgment will be entered accordingly.

**SO ORDERED**.

In San Juan, Puerto Rico, this 23rd day of June, 2015.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge

---

[7] For a jurisdictional evaluation of events preceding and following filing of a complaint see García-Pérez v. Santaella, 364 F.3d 348, 351 (1st Cir. 2011)(pointing out that, even though they are not part of the primary calculus, post-suit happenings may bear on the sincerity of a professed intent to remain in a particular location); White v. All America Cable & Radio, Inc., 642 F.Supp. 69, 72 (D.P.R. 1986) (same).