# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSE APONTE-DÁVILA, <br><br>**Plaintiff,** <br><br>v. <br><br>MUNICIPALITY OF CAGUAS, **et al.**, <br><br>**Defendant**. | **CIVIL NO. 13-1367 (PAD)** |

## OPINION AND ORDER

Delgado-Hernández, District Judge.

Plaintiff filed a motion *in limine* to exclude the testimony of defendants' economic expert, Dr. Jaime Del Valle-Caballero, on two basic grounds: alleged violation of discovery rules and unreliability (Docket No. 267, pp. 11-14). At Docket No. 320, the court considered and rejected the former. Id. at 11-13. Upon analyzing the latter, it certified the issue to the Puerto Rico Supreme Court (Docket Nos. 321, 322) and denied plaintiff's challenge, without prejudice to plaintiff's renewing it if appropriate, following the Supreme Court's response to the certification request (Docket No. 320, pp. 1-2). Without explaining why, the Supreme Court denied the request for certification (Docket No. 327). In the absence of explanation, the court entered a definite ruling denying plaintiff's request to exclude the defendants' expert's testimony (Docket No. 332). Following are the grounds in support of the court's ruling.

## I. BACKGROUND

Plaintiff alleges to have suffered damages as a result of defendants' negligence when he fell while walking on a public sidewalk in Caguas, Puerto Rico, as he passed by a dumpster that was obstructing the sidewalk, which in plaintiff's view, was slippery and dangerous due to the

accumulated grease that seeped from the dumpster (Docket No. 1, p. 4).[1] He seeks compensation for, among other things, lost earnings (Docket No. 1, p. 4), an item recognized in Puerto Rico.[2] He retained an expert witness to support his claim, and in turn, defendants retained Dr. Del Valle. The court held a hearing during which Dr. Del Valle testified. See, Docket Nos. 307 and 314; Transcript of Hearing ("Transcript").[3] Additionally, the parties argued their respective positions on the issues presented for decision. Id.

## II.     DISCUSSION

Plaintiff characterizes Dr. Del Valle's report as self-disqualifying (Docket No. 267, p. 6), complaining that he used a flawed method to compute the value of lost earnings, producing unreliable results. Id. at p. 11. Dr. Del Valle utilized a Life-Participation and Employment ("LPE") methodology. See, Dr. Del Valle's Report (Docket No. 267-2, p. 3).[4] The challenge to the methodology calls for insights into the modeling used here, to evaluate the propriety of applying it to the circumstances of the case within the parameters set by relevant caselaw.

1. Lost Earnings

The lost earnings component of damages is commonly referred to in Spanish as "lucro cesante." See, Ronald Martínez-Cuevas, "Assessing Economic Damages in Personal Injury and

---

[1] As such, the action is subject to Puerto Rico law. See, De-Jesús-Adorno v. Browning Ferris, 160 F.3d 839, 840, 842 (1st Cir. 1998)(applying Puerto Rico law to action for injury plaintiff sustained while attempting to deposit bag into a trash container located in Puerto Rico).

[2] See, Herminio M. Brau, *Los Daños y Perjuicios Extracontractuales en Puerto Rico* 474-516 (1986)(discussing concept under Puerto Rico law).

[3] District Judges have Court Reporters as part of their staff when presiding over the different proceedings held before them. Among other responsibilities listed in 28 U.S.C. § 753, reporters are responsible for promptly transcribing, when requested, the original record of all proceedings held before the judge and prepare and file a certified transcript of the same. The transcript is available, following applicable rules and regulations, to parties who have arranged payment. And it is also available at the request of a judge, at no charge to the court. District Judges have access to the rough drafts of the transcripts before a formal request is made by any interested party, or the transcript is filed for the record in the court.

[4] During the hearing, the Municipality's counsel informed that plaintiff's expert used a different methodology. See, Transcript, p. 181.

Wrongful Death Litigation: The Commonwealth of Puerto Rico," 16(3) *Journal of Forensic Economics* (2003), 329, 331 (so noting). It measures the earnings that the plaintiff could have been expected to receive. Id. It basically consists of two elements: past loss ("lucro cesante pretérito") and estimated future loss ("lucro cesante futuro"). See, Rodríguez-Báez v. Nationwide, 156 D.P.R. 614, 619 (2002)(recognizing both elements); Rodríguez v. Ponce Cement Corp., 98 D.P.R. 201, 217-218 (1969)(same). The estimated future loss has been described as a frustrated future gain that with certain probability would be expected according to the normal course of events. See, Velázquez v. Ponce Asphalt, 113 D.P.R. 39, 48 (1982)(describing term). Recovery is allowed for both types of loss, inasmuch as they represent losses sustained during different periods of time, and as such, do not amount to double recovery.

    2. Evaluative Elements

To evaluate lost earnings, the Puerto Rico Supreme Court has generally considered the claimant's income previous to the alleged damage; an estimation of work-life expectancy based on, among other elements, age, sex, origin, occupation, health, habits, idiosyncrasies and other intangibles; and adjustment to present value. See, Suro v. E.L.A., 111 D.P.R. 456, 461, 466 (1981)(identifying elements). The formula is not rigid. Id. at 461. The resulting calculations may serve as a baseline, as one of the factors the fact finder may consider in conjunction with other circumstances in the case, to make a determination as to the reasonableness of the amount to be awarded for lost earnings. See, Escobar-Galarza v. Banuchi-Pons, 114 D.P.R. 138, 151-153 (1983)(Rebollo, J., Concurrent Opinion)(so recognizing).

    3. Dr. Del Valle's Methodology

Plaintiff has been described as an independent trucker (Docket No. 167-6, p. 3). So Dr. Del Valle took into account plaintiff's net earnings; the intertemporal probability of survival for men in

Puerto Rico; the probability of being employed; and the probability of participating in the labor force for males of the relevant age group in Puerto Rico, relying on data published by the Puerto Rico Health and Labor and Human Resources Departments. See, Dr. Del Valle's Report, Docket No. 267-1 at 5, 12-14.[5] He did not apply interest to past loss and adjusted estimated future loss to present value. Id. at 3-4, 14-15.

At first glance, the calculations seem to reflect the analysis that the Puerto Rico Supreme Court has used to evaluate lost earnings, considering net earnings based on the tax returns that plaintiff produced; determining expected work-life; and adjusting projected probable earnings to present value. See, e.g., Suro, 111 D.P.R. at 456, 461, 466 (lost earnings calculations); Nationwide, 156 D.P.R. at 628-629 (utilizing net rather than gross earnings to calculate economic loss in case of individual – an insurance agent – with no fixed earnings); Antonio J. Amadeo-Murga, *El Valor de los Daños en la Responsabilidad Civil* 136 (2012 ed.)(pointing out need to deduct from gross earnings the expenses necessary to generate them in order to calculate the lost earnings of self-employed individual); Brau, supra at 514-516 (discussing various lost earnings scenarios).

4. Plaintiff's Arguments

Plaintiff alleges that Dr. Del Valle's report is unreliable because it: (i) is vague on the subject of alternate professionals and scenarios; (ii) erroneously projects earnings based on a faulty construction of income stream; (iii) does not include interest; (iv) fails to account for relevant factors; (v) does not explain assumptions; and (vi) mistakenly relies on Puerto Rico data or cohort to estimate work-life expectancy, probability of survival and probability of participating in the labor force, notwithstanding the fact that when the accident occurred, plaintiff was domiciled and working in

---

[5] Dr. Del Valle adjusted plaintiff's probability of being employed to 1 (100 %) because plaintiff was self-employed (Docket No. 267-2, p. 15).

Texas, not Puerto Rico (Docket No. 267, pp. 6-8, 14-15; Docket No. 290, pp. 5-6).[6]

    5.   <u>Analysis of Arguments</u>

(i)    Vagueness

Dr. Del Valle's report estimates at $155,856.00, plaintiff's probable loss of earnings through age 67.95 (Docket No. 267-2, p. 14). The report explains that the partiality of the interruption in earnings can be adjusted by multiplying the compensable loss by the percentage of the interruption, or mitigation. <u>Id.</u> at 15. It observes that the duration of the interruption can be adjusted by truncating the compensation at the year it is found reasonable that plaintiff could be able to return to the labor market. <u>Id.</u> at 16. And in that sense, it states that if it were considered reasonable that plaintiff could be able to return to work in 10 years from the date of the accident while assuming complete disability throughout the period, cumulative compensation could end at year 2018 (2009 to 2018 inclusive) with a $73,812.00 in total compensable loss. <u>Id.</u> Nonetheless, it adds that "many other contingent scenarios for degree of occupational disability and of its duration can be constructed," and that "calculation of the according compensation can be made," but that "this is a matter of expert testimony from other professionals and a legal determination of relevant evidence submitted throughout the proceedings." <u>Id.</u>

Plaintiff asserts Dr. Del Valle's report is self-disqualifying because it does not state what kind of other professionals are needed nor how his opinion is affected by the other equally valid scenarios that he refers to (Docket No. 267, pp. 6-7). He argues that the conclusion leaves no doubt that the opinion, far from assisting the jury, cannot be helpful to the jury in resolving any fact in issue and is

---

[6] In general, the term "cohort" refers to a group comprised by individuals sharing specified characteristics. It has been variously defined as "an aggregate of individual elements, each of which experienced a significant event in its life history during the same chronological interval," *International Encyclopedia of the Social Sciences* (1968); "a group of persons with a common statistical characteristic," *The Oxford Encyclopedic English Dictionary* (1991); and "a subgroup sharing a common factor in a statistical survey, as age or income level," *Webster's New World Dictionary of American English, Third College Ed.* (1988).

unreliable because it can only lead to confusion, conjecture, and speculation about which part, if any, of his calculations is materially relevant to this case considering the other scenarios. Id. at 7. Properly examined, however, the phrase at issue means no more that, if certain assumptions related to the degree of disability or the period of disability change, the overall results would need to change to reflect the changes in the assumptions that the conclusions are based on. Viewed in this manner, the qualifier is commonsensical rather than a breeder of confusion, conjecture or speculation.

    (ii)    *Stream of Earnings*

Plaintiff maintains that Dr. Del Valle erroneously projects annual earnings from a five-year period beginning in 2008 and ending in 2012, even though the only year in which plaintiff worked normally without interruption was 2008, as in the middle of 2009 he was hurt and there were several months when he could not work. See, Transcript, pp. 165-167. Dr. Del Valle used the numbers that plaintiff's expert witness used. Use of those same numbers does not make Dr. Del Valle's opinion unreliable.

    (iii)    *Interest*

Dr. Del Valle did not add interest to past loss. In his report, he states that "addition of interest to past losses, although mathematically correct, is contrary to local jurisprudence (Sro. Vida. de García v. ELA, 111 D.P.R. 456 (1981)) and it is usually applied only in cases where the case has been litigated with 'rashness,' 'boldness' or what in Spanish is called 'temeridad' (2009 Rules of Civil Procedure, Rule 44.3(b)). Therefore, past losses should be computed at their nominal value, without including interest payment" (Docket No. 267-2, pp. 3-4).[7] Plaintiff questions the report, stating that Dr. Del Valle confused interest that is assessed for obstinacy, with the interest that reflects

---

[7] Another English language term for "temeridad" is "obstinacy." See, Candelario del Moral v. UBS Financial Services Incorporated of Puerto Rico, 2016 WL 1275038, *30 (D.P.R. March 31, 2016)(applying English-language term to determination of whether prejudgment interest and attorney's fees should be imposed under Rules 44.1(d) and 44.3(b) of the Puerto Rico Rules of Civil Procedure).

the present value of money (Docket No. 267, p. 13). In this manner, he contends that Dr. Del Valle's methodology is flawed because, by not using interest, he artificially and substantially underestimated future loss of earnings. Id.

The Puerto Rico Supreme Court has not required that interest be added to past loss. See, e.g., Ponce Asphalt, 113 D.P.R. at 44 (awarding past loss without interest); Ponce Cement, 98 D.P.R. at 218-219 (same). And it applies a discount rate of 6% on future projected earnings for present value. See, e.g., Suro, 111 D.P.R. at 467 (applying 6% rate). As an author has adverted, in most of the decisions, the Puerto Rico Supreme Court adds losses before trial without adding or subtracting interest, and discounts only losses estimated for the period after the trial. See, Martínez-Cuevas, supra at 337 (so noting).

On this issue, Demetrio Fernández and Carlos Toro, "El Lucro Cesante en Materia de Responsabilidad Civil Extracontractual: la Confusion de la Torre de Babel," 52 Rev.Jur.U.P.R. 31 (1983), advocate for application of interest to past loss. Id. at 90-91. Herminio M. Brau, however, calculates past loss without applying discount or interest. Id. at 499, 505, 512-513, 515-516 (so doing based on Puerto Rico Supreme Court caselaw). With that in mind, irrespective of the role of interest under the Puerto Rico Rules of Civil Procedure, interest is not to be applied to past loss calculations. See, Nationwide Insurance, 156 D.P.R. at 619-620 & n.9 (no interest); Ponce Asphalt, 113 D.P.R. at 44 (same); Ponce Cement, 98 D.P.R. at 218-219 (similar).

(iv) *LPE's Purported Failure to Account for Relevant Factors*

Relying on H. Richards and M. Donaldson *et al.*, *Life and Worklife Expectancies*, Lawyers & Judges Publishing Company, Inc. (2010 ed.), plaintiff claims that Dr. Del Valle's LPE methodology improperly addresses expectancy rather than capacity; reduces earnings for all periods of unemployment when voluntary unemployment is a choice of allocation of time instead of a

diminishment in capacity to work; fails to distinguish properly between a person who is currently active or inactive and treats all workers as having equal probabilities of working in any subsequent year, which may not be of major importance for younger workers who have relatively high mobility between active inactive periods but becomes critical for older people (such as him), in a way that underestimates the actual participation for initially active older males; and underestimates losses which begin at the middle ages or later because it does not incorporate expectancy and participation probabilities based on the person's actual past patterns, but rather on statistical averages. See, Docket No. 267 at 15-16.[8]

There are various methods to estimate the duration of working life in addition to the LPE method that Dr. Del Valle used. See, H. Richards and M. Donaldson, supra at 105-118 (examining methods). All the same, no "single method of determining the duration of working life is appropriate for all situations," and "no model is without problems." Id. at 116.[9] As for the LPE method, it can incorporate up-to-date information, provides for theoretically-appropriate discounting, and is much easier to implement than other methods. Id. at 118. Similarly, it spreads expected earnings proportionally over many years rather than concentrating them in the earliest periods. Id. at 113. It may not take into consideration preinjury activity patterns, and if so, may underestimate losses for active people whose onset of loss is at older ages. Id. at 118. But so-called work-life methods front-load loss estimates by having all losses occur during an uninterrupted period immediately subsequent to the onset of loss, and usually result in overestimates of loss. Id. at 116.[10]

---

[8] The assessment appears in H. Richards and M. Donaldson, *supra* at 114.

[9] A description and discussion of the strengths, weaknesses, advantages and disadvantages of the more common methods of determining the duration of working life is found in H. Richards and M. Donaldson, *supra* at 105-113, 116-118 (2010 ed.).

[10] On the issue of overestimation, based on Dr. Del Valle's analysis, defendants contend that plaintiff's expert's calculations are grossly inflated (Transcript, p. 182).

On the capacity-expectancy dichotomy, capacity could theoretically extend throughout life expectancy, diminished only by average work-limiting disabilities and other involuntary absences from the labor force, but in practice, is usually taken as the number of uninterrupted years remaining from the age of injury until retirement or another point in the future. Id. at 97. Likewise, even when capacity is the legal standard, expectancy estimators are often used. Id. at 98. And the most common measure of expectancy used by about half of forensic economists is the number of expected years of remaining work-life. Id. In the end, though, the fact that there is a difference of opinion between plaintiff's and defendants' experts as to which methodology is superior does not make Dr. Del Valle's opinion unreliable. See, Advisory Committee Notes on 2000 Amendment to Fed.R.Evid. 702 (noting that amendment adopted in response to Daubert v. Merrell Dow, 509 U.S. 579 (1993) and the cases applying Daubert, is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise).

(v) *Expert Report's Lack of Explanation*

Plaintiff complains that Dr. Del Valle's report does not contain the full explanation for using the Puerto Rico cohort, and for the same reason, argues the report is not reliable. See, Transcript, p. 185. Having heard Dr. Del Valle, exclusion is not called for. He explained to the court's satisfaction how his experience led to the conclusion that a Puerto Rico cohort is appropriate to evaluate plaintiff's claim. He has been consistently using the same methodology since 2000. See, Transcript, p. 29. The methodology has never been rejected or found unreliable. Id. at 32-33. He utilized the same methodology in a report he prepared for one of plaintiff's attorneys in another case before this court. Id. at 53-56. Contrary to plaintiff's contention, the report cannot be rejected simply because it does not cite to sources of supporting authority. See, Delgado v. Dorado Health, Inc., Report and Recommendation, 2016 WL 4742257, *2-*4 (D.P.R. Sept. 2, 2016) and cases cited

therein, 2016 WL 4742259, *1 (D.P.R. Sept. 12, 2016) adopting Report and Recommendation (denying motion to exclude expert's report and testimony under Daubert even though expert did not include citations to treatises, textbooks or articles in support of opinion).

(vi)     Cohort

Plaintiff posits that Dr. Del Valle erred in including him in the Puerto Rico cohort to rely on Puerto Rico survival and labor participation rates to estimate expected work-life and project future lost income (Transcript, p. 167). He asserts he was a domiciliary of Texas, earning income in Texas as a long-haul trucker, an occupation that does not exist in Puerto Rico. Id. at 170-171. And he maintains that there is no authority for using the Puerto Rico cohort to measure loss of Texas income for a Texas domiciliary who does not work in Puerto Rico. Id. at 185.[11]

Defendants observe that plaintiff grew up in Puerto Rico, attended school through high school in Puerto Rico, and went to college in Puerto Rico. Id. at 176-180. They note that plaintiff's first work experiences were in Puerto Rico; he keeps ties to Puerto Rico; visits Puerto Rico; and despite being a domiciliary of Texas,[12] has also resided in Puerto Rico. Id. They point out that plaintiff married three times in Puerto Rico; his former wives are from Puerto Rico, and his children were born and raised in Puerto Rico. Id. They reason that based on plaintiff's links to Puerto Rico, plaintiff has more in common with individuals in Puerto Rico than with other demographic groups for purposes of survivability and labor force participation estimates. Id.

In calculating damages, it is assumed that if the injured party had not been disabled, he would have continued to work, and to generate income at periodic intervals until retirement, disability, or

---

[11] That plaintiff's occupation –long haul trucker– does not exist in Puerto Rico or generated income in a stateside economy with higher wage rates than Puerto Rico does not alter the reliability of Dr. Del Valle's opinion, as Dr. Del Valle used plaintiff's income to calculate lost earnings.

[12] There was testimony that plaintiff lived in a truck and stayed in a hotel during weekends. See, Transcript, at 82-83, 142, 149-150.

death. See, Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 533 (1983)(so noting). An award for impaired earning capacity is intended to compensate the claimant for the diminution in that stream of income. Id. The lost stream's length cannot be known with certainty, as the claimant could have passed away at any time, and the probability that he would still be working at a given date may be constantly diminishing. Id. The uncertainty may be dealt with by considering the probability that some events could occur in the future. Those events include the probability that the claimant will be alive, that he will be participating in the labor force, and that he will be actually employed, to define the expected work-life corresponding to the diminution in the stream of income that the award may compensate him for.[13]

In this context, the Puerto Rico Supreme Court has relied on Federal Department of Labor tables to measure expected work-life, see, Pérez-Cruz v. Hosp. La Concepción, 115 D.P.R. 721, 739 (1984), while also taken into account Puerto Rico Health Department tables for life expectancy and Federal social security tables for work-life projections. See, Ponce Asphalt, 113 D.P.R. at 44. As an *Erie* prediction, the court concludes that use of the Puerto Rico cohort comports with this approach.[14] As mentioned earlier, the Puerto Rico Supreme Court has observed that expected work-life is a function of age, sex, occupation, health, origin, habits, idiosyncrasy and other intangible factors. See, Suro, 111 D.P.R. at 461 (so recognizing). And it has also acknowledged that the formula is not rigid (id.), but one of the factors to be considered together with other circumstances of the case, to determine what amount should be reasonably awarded for lost earnings. See, Escobar-Galarza, 114

---

[13] The labor force includes both the employed and the unemployed, but it does not include those who have no job and are not looking for one. See, Mark S. Guralmick, *Formulas for Calculating Damages*, 158 (ABA 2012)(discussing concept in context of work-life expectancy projections).

[14] See, Candelario del Moral v. UBS Financial Services Inc. of Puerto Rico, 699 F.3d 93, 98-99 (1st Cir. 2012)(explaining term in case where federal court decided issue of state law after the Puerto Rico Supreme Court denied certification petition from U.S. District Court for the District of Puerto Rico).

D.P.R. at 152-153 (Rebollo, Concurrent Opinion)(stating proposition). Therefore, it is up to the jury to make that same determination, utilizing the Puerto Rico cohort as well as any other evidentiary factor(s) deemed relevant to reach a decision on what that amount should be.

### III. CONCLUSION

For the reasons stated, defendants are entitled to present Dr. Del Valle's expert testimony at trial.

**SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of August, 2019.

s/Pedro A. Delgado-Hernández
PEDRO. A. DELGADO-HERNANDEZ
UNITED STATES DISTRICT JUDGE